[Cite as *State v. Paul*, 2017-Ohio-4054.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                     |   | JUDGES:                     |
|---------------------|---|-----------------------------|
| STATE OF OHIO       | : | Hon. W. Scott Gwin, P.J.    |
|                     | : | Hon. Craig R. Baldwin, J.   |
| Plaintiff-Appellee  | : | Hon. Earle E. Wise, J.      |
|                     | : |                             |
| -vs-                | : |                             |
|                     | : | Case No. 16-COA-036         |
| SANDRA RAE PAUL     | : |                             |
|                     | : |                             |
| Defendant-Appellant | : | O P I N I O N               |


CHARACTER OF PROCEEDING:     Criminal appeal from the Ashland Municipal
                             Court, Case No. 15-CRB-01023


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      May 30, 2017

APPEARANCES:

For Plaintiff-Appellee            For Defendant-Appellant

JOHN HOLLAND                      JOSEPH KEARNS, JR.
1343 Sharon-Copley Road           P.O. Box 345
Box 345                           153 West Main Street
Sharon Center, OH  44274          Ashland, OH 44805

*Gwin, P.J.*

{¶1} Appellant Sandra Rae Paul ["Paul"] appeals her conviction and sentence after a bench trial in the Ashland Municipal Court on one count of animal cruelty in violation of Loudonville Ordinance 618.05(A)(2), a second-degree misdemeanor.

*Facts and Procedural History*

{¶2} On or about September 01, 2015, Paul had driven from property she owned in Jeromesville, Ohio to an apartment she had in the Village of Loudonville, Ohio. She had 17 chickens with her packed up in three large Tupperware plastic tubs, with top grates and chicken waterers. She brought them with her due to fears of possible predators killing them if left unattended at the Jeromesville property. Upon arriving in the parking lot by the apartment, she parked her 1995 Chrysler minivan with the rear facing south, and went to the apartment at about 10:00 a.m.

{¶3} Tom Crist, a maintenance worker at the Loudon Bluffs Apartment complex in Loudonville, Ohio, approached a dark green van in the parking lot in response to complaints from other residents. The van was in a position where it would be in the direct sun without shade all during the day. It was a humid, with temperatures in the mid-eighties. The front windows of the van were opened about one and one half to two inches.

{¶4} Crist saw one chicken inside the van that appeared to be dead, and one that appeared to be alive. There was a strong odor of dead animals coming from the vehicle. The van was piled with many objects, including a kitchen sink. The amount of chicken feces inside the van appeared to have accumulated over three or four days.

{¶5} Crist called his supervisor and the police. After the police arrived, Paul, who was a resident of Loudon Bluffs Apartments, approached and admitted that she was keeping chickens in the van.

{¶6} Officer Michael Barrett of the Loudonville Police arrived around 7:46 pm. He confirmed a strong smell of dead animals coming from the vehicle. It was very hot inside the van. A wave of heat came from the interior when the door was opened. Paul told the officer that chickens can stand heat, and then commented, "If they die, they die."

{¶7} Crist noted a concern with Paul's appearance, due possibly to her illness or medication and would not permit her to drive the chickens back to the property in Jeromesville, but he called a friend that he believed was familiar with chickens to remove them. This person, Tiffany Meyer, a realtor, arrived after the sun had set, and had two cat carriers, measuring approximately 2 feet x 18 inches x 18 inches, or 18 inches x 12 inches x 12 inches, depending on the description, to carry the seventeen chickens. Ms. Meyers stuffed the chickens into the two carriers. All chickens were alive when removed from the van by Ms. Meyer. Ms. Meyers took the chickens to a client's barn and left them there for the night. The next day, she discovered one had died. Ms. Meyers admitted that it was possible the one chicken suffered injuries during transportation to the barn.

{¶8} Paul was cited at about 8:05 PM, or about 20 minutes after the officer arrived on scene.

{¶9} Dr. Melissa Ferry testified as a veterinarian with specific expertise in and knowledge of birds and livestock standards. Dr. Ferry opined that, under the conditions described in this case, the ambient temperature inside the van would have been

conservatively 130 to 140 degrees.  It would take about forty minutes for the temperature to rise to that level inside the van.  Dr. Ferry said that chickens under these conditions would have become sick or in some other way suffered.  She said that exposure to this severe heat was the likely cause of death for the one that died.

{¶10}    Paul testified in her own defense. Paul admitted that she arrived in the van at the apartment complex with the chickens around "9 or 10 am."  Paul portrayed herself as a person who had experience with chickens.  She kept flocks of up to 70 birds for seven or eight years.  Paul was once employed as an animal control officer, with specific training in the animal cruelty and neglect laws of the State of Ohio.  Paul testified September 1, 2015 was the very first time she ever had the chickens at the Loudonville Apartment.  She said she was compelled to move the chickens that day because rodents were killing them.  Paul was unable to remember when rodents killed any of the chickens, or how many were killed.  Paul testified the van she drove had eight total windows, including the windshield and back window.  The other six windows she said were open.  This included the two conventional roll-down windows for the driver and front passenger, as well as four tilt-out windows on the sides of the van.  Several of the windows were tinted.

{¶11}  Paul was found guilty after a bench trial of animal cruelty in violation of Loudonville Ordinance 618.05(A) (2), a second-degree misdemeanor.  The trial court sentenced Paul to ninety days in jail, consecutive with the thirty days she was already ordered to serve for failure to previously appear.  Seventy days were suspended pending successful completion of two years' probation.  Paul was fined $100 plus court costs.

*Assignments of Error*

{¶12} "I. THE TRIAL COURT ERRED BY FINDING THE APPELLANT GUILTY WHEN THE FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶13} "II. WAS THE APPELLANT DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN TRIAL COUNSEL FAILED TO OBJECT TO IMPROPER EVIDENCE?"

I.

{¶14} In her first assignment of error, Paul argues that, although she did confine the chickens, the state failed to prove beyond a reasonable doubt that she did not afford the animals, "during such confinement, access to shelter from wind, rain, snow or excessive direct sunlight." (Appellant Brief at 7). Further Paul contends that "change of air" and excessive heat are not elements of Loudonville Ordinance 618.05(A)(2). Finally, Paul argues that the veterinarian was not a competent witness to testify as to the temperature of the vehicle at the time of harboring the chickens, and further she was not given proper facts upon which to base an opinion, such as angle of the sun, any cloud cover that day, humidity, wind speed and direction, as well as the fact that all of the windows in the van were open, and not just the front two roll down windows, how the van was parked or that some of the windows were tinted and how much tinted.

**Standard of Review.**

{¶15} Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown*, 558 U.S. 120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming

this standard); *State v. Fry*, 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶ 146; *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶ 68.

**{¶16}** Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio–355. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis sic.) Id. at 387, 678 N.E.2d 541, quoting Black's Law Dictionary (6th Ed. 1990) at 1594.

**{¶17}** When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony. Id. at 387, 678 N.E.2d 541, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, supra, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly,

reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" Id.

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶18} In the case at bar, Loudonville Ordinance 618.05(A)(2) provides, in relevant part,

(a) No person shall:

* * *

(2) Impound or confine an animal without affording it, during such confinement, access to shelter from wind, rain, snow or excessive direct sunlight if it can reasonably be expected that the animal would otherwise become sick or in some other way suffer. This subsection (a)(2) does not apply to animals impounded or confined prior to slaughter. For the purpose of this section, "shelter" means a man-made enclosure, windbreak, sunshade or natural windbreak or sunshade that is developed from the earth's contour, tree development or vegetation;

{¶19} The ordinance is identical to R.C. 959.13. Proof of recklessness is required to sustain a conviction under the R.C. 959.13(A), and hence under Loudonville Ordinance 618.05. *See, State v. Dresbach,* 122 Ohio App.3d 647, 652, 702 N.E.2d 513(10th Dist. 1997).

{¶20} In *State v. McClure*, the state presented evidence that on September 17, 1992, the appellant parked her car outside the Lebanon Goodwill Store and went inside. According to the manager, the appellant arrived sometime before noon and stayed approximately an hour and a half. At approximately 1:10 p.m., humane officers from the Warren County Humane Society responded to an anonymous complaint of distressed animals confined in a car in the Goodwill parking lot. Among other things, the humane officers checked the windows and found that only one window was open, cracked approximately one inch. The car was sitting in direct sunlight and the temperature outside was somewhere between eighty and eighty-five degrees. Witnesses estimated that the temperature inside the car would have been one hundred twenty degrees within one-half hour. In finding that the appellant's conviction was not against the sufficiency or the manifest weight of the evidence, the court noted,

> The state presented evidence that appellant confined the cats in the car for an hour and a half in extreme heat without water so that the animals were suffering from severe heat stress. Therefore, the state presented substantial evidence on all the elements of the offense, and we cannot conclude that the conviction is against the manifest weight of the evidence. Appellant is simply arguing that her evidence is more credible. However,

matters as to the credibility of evidence are for the trier of fact to decide.

*State v. DeHass* (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. 12th Dist. Warren No. CA93-01-007, 1993 WL 414234 (Oct. 18, 1993). Excessive heat or sunlight is a legitimate factor to consider in determining whether a person was reckless in confining an animal under the circumstances. *See, State v. Martin,* 5th Dist. Stark No. 2006CA00339, 2007-Ohio-4821, ¶52; *State v. Brooks,* 9th Dist. Medina No. 07 CA 0111-M, 2008-Ohio-3723, ¶31-32.

***Appellant failed to object to the testimony she claims was admitted in error.***

**{¶21}** Paul argues that the veterinarian was not a competent witness to testify as to the temperature buildup inside the vehicle.

**{¶22}** "[A] trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). Paul concedes that she did not object to the veterinarian's testimony concerning the buildup of heat inside the van.

**{¶23}** "[F]orfeiture is the failure to timely assert a right or object to an error, and * * * 'it is a well-established rule that "an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called, but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." *State v. Rogers*, 143 Ohio St.3d 385, 2015–Ohio–2459, 38 N.E.3d 860, ¶ 21.

{¶24} The accused may raise a forfeited claim on appeal through Crim.R. 52(B). Pursuant to Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

{¶25} The Court in *Rogers* reaffirmed that even if an accused shows the trial court committed plain error affecting the outcome of the proceeding, the appellate court is not required to correct it. Id. at ¶ 23. The Supreme Court stated:

> [W]e have "admonish[ed] courts to notice plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *Barnes* at 27, 94 Ohio St.3d 21, 759 N.E.2d 1240, *quoting State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

*Rogers* at ¶ 23; *Accord, State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002); *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus; *State v. Perry*, 101 Ohio St.3d 118, 120 802 N.E.2d 643(2004).

{¶26} The defendant bears the burden of demonstrating that a plain error affected her substantial rights. *United States v. Olano*, 507 U.S. at 725,734, 113 S.Ct. 1770, 123 L.Ed.2d 508(1993); *State v. Perry*, 101 Ohio St.3d 118, 120 802 N.E.2d 643(2004).

{¶27} Paul refused an opportunity to voir dire the witness upon her qualifications and did not specifically object to her opinion testimony concerning the buildup of heat inside the van. Paul vigorously challenged the veterinarian's opinion and the basis for her opinion on cross-examination.

**{¶28}** Assuming *arguendo* an error occurred in the admission of the veterinarian's statements concerning the buildup of heat inside the van, it was harmless. We note that any error will be deemed harmless if it did not affect the accused's "substantial rights." Before constitutional error can be considered harmless, we must be able to "declare a belief that it was harmless beyond a reasonable doubt." *United States v. Chapman,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705(1967). Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal. *State v. Conway,* 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶78, citing *Chapman; State v. Lytle*, 48 Ohio St.2d 391, 358 N.E.2d 623(1976), paragraph three of the syllabus, *vacated in part on other grounds Lytle v. Ohio,* 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154(1978). *See also*, *State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶177.

**{¶29}** In the case at bar, the testimony established that the outside temperatures were in the mid-80s. When the van doors were opened in the late afternoon, the investigating officer felt a wave of heat escape from inside. The birds inside the van were lethargic. At least one was so nonresponsive it appeared to be dead. One did die later that night. The veterinarian said that the cause of death was most likely its failure to recover from exposure to heat. All of the birds exhibited extreme thirst when removed. The trial court likened the van to a "greenhouse" trapping in the heat. Further, the trial court noted if the windows had been opened as much as Paul claimed they were the chickens that were loose inside the van would have escaped.

**{¶30}** Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that

Paul recklessly violated Loudonville Ordinance 618.05. We hold, therefore, that the state met its burden of production regarding each element of the crimes of cruelty to animals accordingly; there was sufficient evidence to support Paul's conviction.

{¶31} As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence, upon which the fact finder could base his or her judgment. *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA–5758, 1982 WL 2911(Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction*, 54 Ohio St.2d 279, 376 N.E.2d 578(1978). The Ohio Supreme Court has emphasized: "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *.'" *Eastley v. Volkman*, 132 Ohio St.3d 328, 334, 972 N.E. 2d 517, 2012-Ohio-2179, *quoting Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191–192 (1978). Furthermore, it is well established that the trial court is in the best position to determine the credibility of witnesses. *See, e.g., In re Brown*, 9th Dist. No. 21004, 2002–Ohio–3405, ¶ 9, *citing State v. DeHass*, 10 Ohio St .2d 230, 227 N.E.2d 212(1967).

{¶32} Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact

finder lost its way.'" *State v. Pallai*, 7th Dist. Mahoning No. 07 MA 198, 2008-Ohio-6635, ¶31, *quoting State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964 (2nd Dist. 2004), ¶ 81. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002-Ohio-1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999).

{¶33} The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶118. *Accord, Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

{¶34} The judge as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the [trier of fact] may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP-739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236, 1996 WL 284714 (May 28, 1996). Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP-1238, 2003-Ohio-2889, *citing*

*State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks, supra.*

**{¶35}** We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. The judge neither lost his way nor created a miscarriage of justice in convicting Paul of the charge.

**{¶36}** Based upon the foregoing and the entire record in this matter, we find Paul's conviction was not against the sufficiency or the manifest weight of the evidence. To the contrary, the judge appears to have fairly and impartially decided the matters before him. The judge as a trier of fact can reach different conclusions concerning the credibility of the testimony of the state's witnesses and Paul. This court will not disturb the judge's finding so long as competent evidence was present to support it. *State v. Walker*, 55 Ohio St.2d 208, 378 N.E.2d 1049 (1978). The judge heard the witnesses, evaluated the evidence, and was convinced of Paul's guilt.

**{¶37}** Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crime beyond a reasonable doubt.

**{¶38}** Paul's first assignment of error is overruled.

II.

**{¶39}** In her second assignment of error, Paul argues that she was denied the effective assistance of trial counsel. Specifically, Paul contends her trial counsel was

ineffective because counsel failed to object that the veterinarian was not a competent witness to testify as to the temperature buildup inside the vehicle.

{¶40} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180(1993); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373(1989).

{¶41} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Bradley,* 42 Ohio St.3d at 143, 538 N.E.2d 373, *quoting Strickland,* 466 U.S. at 697, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984).

{¶42} To show prejudice, Paul must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. 2052. The prejudice inquiry, thus, focuses not only on outcome determination, but also on "whether the result of the proceeding was fundamentally unfair or unreliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

{¶43} As we noted in our disposition of Paul's first assignment of error even if error in the admission of the veterinarian's testimony concerning the buildup of heat inside the

van had occurred, it was harmless beyond a reasonable doubt.  There is no indication in light of the overwhelming evidence of Paul's guilt that the judge abandoned his oath and his integrity and found Paul guilty of the crime because of the veterinarian's testimony concerning the buildup of heat inside the van.  In any case, the evidence overwhelmingly supports a finding of Paul's guilt.  Paul cannot claim that but for these statements, she would be acquitted.

{¶44}  After a thorough review of the record, we have no doubt that the remaining properly introduced evidence overwhelmingly establishes defendant's guilt.  *See Delaware v. Van Arsdall* (1986), 475 U.S. 673, 681, 106 S.Ct. 1431, 89 L.Ed.2d 674; *State v. Williams* (1983), 6 Ohio St.3d 281, 452 N.E.2d 1323.

{¶45}  Smith's second assignment of error is overruled.

{¶46}  The judgment of the Ashland Municipal Court, Ashland County, Ohio is affirmed.

By Gwin, P.J.,

Baldwin, J., and

Wise, Earle J., concur