[Cite as *State v. Joiner*, 2021-Ohio-359.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| HEATHER MARIE JOINER | : | Case No. 2020 CA 00016 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:          Appeal from the Municipal Court,
                                                          Case No. 2019 CRB 05016

JUDGMENT:                                       Affirmed

DATE OF JUDGMENT:                       February 8, 2021

APPEARANCES:

For Plaintiff-Appellee                        For Defendant-Appellant

BRITTANY M. FLETCHER                  D. COLEMAN BOND
218 Cleveland Avenue SW               600 Courtyard Centre
Canton, OH  44702                           116 Cleveland Avenue NW
                                                          Canton, OH  44702

*Wise, Earle, J.*

{¶ 1}  Defendant-Appellant Heather Joiner appeals the December 11, 2019 judgment of conviction and sentence of the Canton Municipal Court, Canton, Ohio. Plaintiff-appellee is the state of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶ 2}  On August 29, 2019, Canton Police Officer Christina Paumier was dispatched to appellant's home in response to an animal welfare check. According to Tammy Pribula, the neighbor who had reported the matter, appellant's four dogs, two pit bulls and two small breed dogs, had been left outside all day in the 80-deegree heat with no water, food, or means to seek shelter from the sun and heat.

{¶ 3}  Upon arrival Officer Paumier noted the odor of animal feces emanating from the residence before she even exited her cruiser. At the side of the house Paumier saw an emaciated pit bull mix tied to a fence and tangled in its 5-6 foot tether. At the rear of the home she discovered another pit bull in similar condition, also tied to a fence and wrapped up in its tether. Paumier also observed two small dogs in the back yard. These dogs were in better physical condition than the pit bulls, but were confined together in a small cage. All of the dogs were confined in the sun without the ability to seek shade and without water. Given her observations, Paumier requested a humane officer.

{¶ 4}  Stark County Humane Agent Ryan Fowler was dispatched to the scene. Upon arrival he observed the poor condition of the pit bulls, the fact that none of the dogs had access to water or shelter from the sun, and made the decision to remove the dogs from the property. He transported the animals to the Stark County Humane Society.

{¶ 5}   Dr. Kimberly Carter assessed the animals following their arrival at the Humane Society. On a body condition scale of one to nine, with four to five being ideal, the pit bulls were both scored a two, which is very thin. In her opinion, these dogs had gone without adequate food for weeks. It was also Dr. Carter's opinion that dogs in this state could be brought to a healthy weight within a couple weeks. Dr. Carter found the two smaller dogs to be at a healthy weight. She also found the dogs to be mildly dehydrated but not dangerously so.

{¶ 6}   As a result of this investigation, appellant was charged with four counts of cruelty to animals in violation of R.C. 959.13. Appellant pleaded not guilty and opted to proceed to a jury trial which took place on December 10, 2019. The above facts were elicited by the state and appellant testified on her own behalf.

{¶ 7}   Appellant testified she owned the two smaller dogs and the pit bulls initially belonged to her ex-boyfriend. But because he failed to provide care for the dogs, she took responsibility for the dogs. She further testified the pit bulls did not come to her home until July. This testimony was contrary to that of appellant's neighbor and Humane Agent Fowler who stated the dogs had been there since April or May.

{¶ 8}   After hearing all the evidence and deliberating, the jury found appellant guilty as charged.

{¶ 9}   Appellant was subsequently sentenced to 90 days local incarceration. The trial court granted a stay of sentence pending the outcome of this appeal. Appellant raises three assignments of error as follow:

I

{¶ 10} "WHETHER THE APPELLANT WAS ENTITLED TO A JUDGMENT OF ACQUITTAL ON THE CHARGE OF CRUELTY TO ANIMALS IN VIOLATION OF R.C.959.13 BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION BEYOND A REASONABLE DOUBT?"

II

{¶ 11} "WHETHER THE EVIDENCE PRESENTED WAS INSUFFICIENT TO SUSTAIN A CONVICTION FOR THE OFFENSE OF CRUELTY TO ANIMALS IN VIOLATION OF R.C. 959.13 BEYOND A REASONABLE DOUBT?"

III

{¶ 12} "WHETHER THE APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND MUST BE REVERSED?"

I, II, III

{¶ 13} Because appellant's arguments are interrelated, we address them together. In her three assignments of error, appellant claims the trial court erred in denying her Crim.R. 29 motion for acquittal, and that her convictions are against the sufficiency and manifest weight of the evidence. We disagree.

**Motion for Acquittal**

{¶ 14} Crim.R. 29 governs motion for acquittal. Subsection (A) states the following:

> The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment,

information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

{¶ 15} The standard to be employed by a trial court in determining a Crim.R. 29 motion is set out in *State v. Bridgeman*, 55 Ohio St.2d 261, 381 N.E.2d 184 (1978), syllabus: "Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."

{¶ 16} Appellant was convicted of four counts of cruelty to animals pursuant to R.C. 959.13(A)(1), one count for each dog. That section provides:

(A) No person shall:

(1) Torture an animal, deprive one of necessary sustenance, unnecessarily or cruelly beat, needlessly mutilate of kill, or impound or confine an animal without supplying it during such confinement with a sufficient quantity of good wholesome food and water.

{¶ 17} The complaints filed in this matter specifically alleged appellant confined the two small dogs outdoors on a hot day, exposed to the elements, and without food or

water. As for the two pit bulls, the complaints alleged appellant confined the dogs outdoors without food and water as well as depriving the dogs of necessary sustenance as evidenced by their emaciated appearance.

{¶ 18} Appellant argues the trial court erred in denying her Crim.R. 29 motion for acquittal at the close of state's evidence. Appellant specifically argues the state failed during its case in chief to prove she owned the dogs or was responsible for their care. Upon examination of the record, we note several points during the state's case in chief wherein ownership of the dogs was discussed.

{¶ 19} First, Officer Christina Paumier testified she had previous interactions with appellant and was familiar with the two smaller dogs. These dogs had been identified to Paumier as belonging to appellant. Transcript of Trial (T.) 99. Later in Officer Paumier's testimony, she advised the two pit bulls had been the subject of a welfare check a month before the instant matter. At that time, appellant advised the dogs were malnourished because she had just obtained the animals several weeks prior. Appellant claimed they were rescued from an abusive situation and she was fostering them. She was therefore given a period of time to nurse the dogs back to health. T. 107.

{¶ 20} Next, Humane Officer Ryan Fowler testified when he made contact with appellant in the instant matter, she stated the pit bulls had lived on her property for five months but belonged to Shawn Taylor and he was responsible for their care. She stated the two smaller dogs were hers. Fowler then spoke with Taylor who said he was the caretaker for the two pit bulls. T. 135-136.

{¶ 21} Because Paumier and Fowler presented conflicting testimony, reasonable minds could come to different conclusions as to the ownership of the pit bulls. The trial court therefore did not err in denying appellant's Crim.R. 29 motion for acquittal.

**Sufficiency and Manifest Weight**

{¶ 1} Appellant further challenges the sufficiency and manifest weight of the evidence. Appellant specifically argues the state failed to establish she acted recklessly, and further failed to produce adequate credible evidence to support her convictions. We disagree.

{¶ 2} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Jenks at paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶ 3}   As an initial matter, in support of her arguments appellant cites several cases involving animal abuse with facts far more dire and gruesome than the facts at hand. She appears to urge because the facts herein were not as dire, they cannot constitute abuse of animals. While we understand appellant's argument, we also note that R.C. 959.13(A)(1) as charged here, does not require the animal's situation to be dire. Rather, as charged here, it requires only that appellant recklessly confined her dogs without providing them adequate food and water during their confinement, and deprived the two larger dogs of adequate sustenance.

{¶ 4}   Next, R.C. 2901.22(C) defines "recklessly" as follows:

A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the persons conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

{¶ 5}   We have previously found "[e]xcessive heat or sunlight is a legitimate factor to consider in determining whether a person was reckless in confining an animal under the circumstances." *State v. Paul*, 5th Dist. Ashland No. 16-COA-036, 2017-Ohio-4054, ¶ 20. Officer Paumier testified all four dogs were confined in the yard, either tethered or caged in the sun on a day with temperatures around 80 degrees with no food or water.

She further testified there was no shelter provided for the dogs within which to escape the heat and sun. T. 95-97. Humane Officer Fowler corroborated Paumier's observations, and based on his own observations including the poor condition of the pit bulls, removed the animals from the property. T. 124-128.

{¶ 6} Further, while appellant testified the dogs had been outside for only an hour and a half when the humane office arrived at 6:00 p.m., Tammy Pribula, the neighbor who called police regarding the matter indicated the dogs had been outside since 10:00 a.m. T. 86-87, 214-215. Pribula further testified this was not unusual, and explained the pit bulls were often tied up outside without water. In fact she and her sister had taken water to the dogs on occasion. T. 85.

{¶ 7} The state further presented evidence that appellant had been responsible for the care of the pit bulls for more than a month. T. 107. Appellant then testified that although her ex-boyfriend brought the pit bulls to her home, she took responsibility for them. T. 220.

{¶ 8} Certainly conflicting evidence was presented in this matter. However, where conflicting evidence is introduced as to any of the elements necessary to constitute a violation of the statute, a jury question is created. *Tomlinson v. City of Cincinnati*, 4 Ohio St.3d 66, 69, 446 N.E.2d 454 (1983). Moreover, we are mindful that we must construe the evidence in the light most favorable to the state in resolving a sufficiency challenge. *Jenks*, 61 Ohio St.3d at 279, 574 N.E.2d 492.

{¶ 9} We find this evidence presented by the state sufficient to support a finding that appellant acted recklessly. We further find this evidence sufficient to support

appellant's convictions as to the remaining elements of animal abuse, and find the jury did not lose its way in sorting out issues of conflicting evidence and credibility.

{¶ 10} Appellant's three assignments of error are overruled.

{¶ 11} The judgment of the Canton Municipal Court is affirmed.

By Wise, Earle, J.

Delaney, P.J. and

Baldwin, J. concur.

EEW/