[Cite as *State v. Graves*, 2017-Ohio-6942.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NO. CA2016-11-096 |
| Plaintiff-Appellee, | : | |
| | | O P I N I O N |
| | : | 7/24/2017 |
| - vs - | | |
| | : | |
| JOHN O. GRAVES, | : | |
| | | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT
Case No. 2016CRB000632

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee

Thomas W. Condit, P.O. Box 12700, Cincinnati, Ohio 45212, for defendant-appellant

**M. POWELL, J.**

{¶ 1} Defendant-appellant, John O. Graves, appeals his conviction in the Warren County Court for cruelty to animals.

{¶ 2} On June 26, 2016, appellant took his stepson's Yellow Labrador (the "dog") with him and drove to a Kroger store to pick up a prescription and a few other items. The weather that day was clear and sunny, with high humidity and a temperature in the low 90s. Appellant

ran the air conditioning in his van on the way to Kroger, located about two miles from his house. Upon arriving at Kroger, appellant parked his van in an unshaded spot on the black-top parking lot, turned off the van, locked it, and entered Kroger, leaving the dog in the van. The van's windows were completely closed. Appellant estimated he arrived at Kroger shortly after noon.[1]

{¶ 3} Between noon and 12:05 p.m., Tyler and Christine Saxton parked their car on the Kroger parking lot behind appellant's van. Appellant was already inside Kroger. Upon parking their car, the Saxtons noticed the dog in the van. The dog was staring at them, looked "apathetic," and was "panting a little bit." Concerned, given the weather conditions and the fact the van's windows were not opened, the Saxtons entered Kroger to inform customer service of the dog in the van.

{¶ 4} Because there was a long line at the customer service desk, Mr. Saxton went directly to the desk and announced loudly that there was a dog in a white van with the windows sealed on the parking lot. Appellant, who was in line at the customer service desk or in the vicinity, heard Mr. Saxton and told him that it was his van. Mr. Saxton told appellant that it was too hot to leave a dog in a sealed van and that he needed to let the dog out. Appellant replied that "he does it all the time and he knows how his dog can be." Appellant and Mr. Saxton continued to debate the matter for a few minutes until appellant told Mr. Saxton that it was none of his business. Appellant then proceeded to run his errands in Kroger. Store receipts show that he paid for his prescription at 12:21 p.m. and his groceries at 12:44 p.m.

{¶ 5} Meanwhile, Mrs. Saxton called 9-1-1 to report the dog in a sealed van. The Saxtons then walked back to the van to wait for the police. By then, it had become hotter

---

1. Appellant later changed his testimony and based on Kroger receipts and his belief he was away from his van for a total of 32 minutes, estimated he probably arrived at Kroger "very close to 12:14 [p.m.]."

outside. In fact, it was so hot and humid that while waiting for the police to arrive, the Saxtons "were both sweating [themselves] standing out" and Mr. Saxton's "shirt was completely soaken wet from me standing out there." The dog was still panting, was "sitting very still, not moving much," and looked "very apathetic." Very concerned, the Saxtons attempted to open the van doors but found that they were locked.

{¶ 6} Hamilton Township Police Officer Katie Goodpaster was dispatched to the scene and arrived there at approximately 12:19 p.m. The officer observed that "there was a yellow lab inside a vehicle that was not running, all the windows were completely rolled up, [and] there didn't appear to be any air flow [in the van]." The dog was panting, appeared to be lethargic, was "sitting slouched up against the back seat [and] wasn't moving at all." Officer Goodpaster and another officer waited another five or six minutes for appellant to exit Kroger. During this time, the dog's panting became more strenuous and she lay down. Concerned for the safety of the dog and with appellant nowhere in sight, the officers unlocked the van, removed the dog, and placed her in an air-conditioned police cruiser. In removing the dog from the van, Officer Goodpaster noted that it was "considerably warmer inside the vehicle than standing outside of it." The weather channel application on her phone indicated that the temperature was 92 degrees outside but feeling like 98 degrees with the humidity. Officer Goodpaster did not observe any water in the van for the dog.

{¶ 7} Appellant finally exited Kroger at 12:45 p.m. Appellant told the other officer that "he knew his dog, she'd been left out in the car in the heat before and that he didn't realize he'd been in the store for that long." Officer Goodpaster issued appellant a citation for cruelty to animals.

{¶ 8} On July 11, 2016, appellant was charged by criminal complaint with cruelty to animals in violation of R.C. 959.13(A)(3). The matter proceeded to a bench trial on August 30, 2016. At trial, Officer Goodpaster and the Saxtons testified on behalf of the state.

Appellant testified on his own behalf. The officer testified that some dogs can tolerate and handle heat better than others, and that larger and/or older dogs typically do not handle heat as well as smaller and/or younger dogs.

{¶ 9} Appellant explained he left the dog in a sealed car because he was afraid someone might steal her, and that by his own account, he was away from the van for only 32 minutes. Appellant testified that on prior occasions he had successfully left the dog in a vehicle for 15 to 30 minutes while he ran errands. Appellant further testified that a dog would survive in 92 degrees indefinitely and that dogs have higher temperatures than human beings and can easily stand heat. Finally, appellant described how he performed an experiment with an indoor thermometer after he returned home. Specifically, appellant parked the van in direct sunlight and placed the thermometer in the back seat at approximately 1:00 p.m. As the air conditioning had run between Kroger and his home, the initial temperature inside the van was 72 degrees. Appellant stated that the temperature inside the van rose to 92 degrees after an hour and that "at the 45 minutes period, which would have exceeded the time the dog was in the car it was 88 degrees."

{¶ 10} Following the state's presentation of its case-in-chief, appellant moved for a Crim.R. 29 acquittal. The trial court denied the motion. Appellant renewed his motion at the conclusion of the trial. Then, in closing arguments, appellant challenged the constitutionality of R.C. 959.13(A)(3), arguing it was void for being vague and overbroad. The trial court took the matter under advisement.

{¶ 11} On September 2, 2016, the trial court found appellant guilty of cruelty to animals. The trial court subsequently sentenced appellant to five days in jail, which were suspended, and to non-reporting probation for six months, and ordered him to pay court costs and a $250 fine.

{¶ 12} Appellant now appeals, raising one assignment of error:

{¶ 13} THE TRIAL COURT ERRED BY FINDING DEFENDANT GUILTY OF CRUELTY TO ANIMALS UNDER R.C. §959.13(A)(3).

{¶ 14} In his single assignment of error, appellant challenges his conviction for cruelty to animals on two grounds. First, appellant argues that R.C. 959.13(A)(3) is unconstitutional because the statute is void for vagueness as applied to him and overbroad. Second, appellant argues his conviction is not supported by sufficient evidence and is against the manifest weight of the evidence because the state failed to prove two elements of the offense.

{¶ 15} R.C. 959.13(A)(3) provides that "[n]o person shall * * * [c]arry or convey an animal in a cruel or inhuman[e] manner." R.C. 959.13 does not define "cruelty." However, R.C. 1717.01 sets forth definitions that apply to "every law relating to animals" and defines "cruelty" as "every act, omission, or neglect by which unnecessary or unjustifiable pain or suffering is caused, permitted, or allowed to continue, when there is a reasonable remedy or relief." R.C. 1717.01(B). Because R.C. 959.13 does not specify the mental state required to commit the offense, the state is required to prove the defendant acted recklessly. *State v. Paul*, 5th Dist. Ashland No. 16-COA-036, 2017-Ohio-4054, ¶ 19; *State v. McClure*, 12th Dist. Warren No. CA93-01-007, 1993 Ohio App. LEXIS 5034, *4 (Oct. 18, 1993).

{¶ 16} In his first issue, appellant challenges his conviction for cruelty to animals, arguing that R.C. 959.13(A)(3) is unconstitutional because the statute is void for vagueness as applied to him and overbroad.

{¶ 17} Legislative enactments are afforded a strong presumption of constitutionality. *State v. Collier*, 62 Ohio St.3d 267, 269 (1991). Consequently, "courts must apply all presumptions and pertinent rules of construction so as to uphold, if at all possible, a statute or ordinance assailed as unconstitutional." *State v. Dorso*, 4 Ohio St.3d 60, 61 (1983); *State v. Worst*, 12th Dist. Butler No. CA2004-10-270, 2005-Ohio-6550, ¶ 41. When a statute is

alleged to be void for vagueness, all doubts are to be resolved in favor of the constitutionality of the statute. *State v. Harrington*, 159 Ohio App.3d 451, 2004-Ohio-7140, ¶ 20 (12th Dist.).

{¶ 18} Constitutional challenges to a statute involve facial challenges as well as challenges to the application of the statute. The two types of challenges require different standards of proof. *State ex rel. Ohio Congress of Parents & Teachers v. State Bd. Of Edn.*, 111 Ohio St.3d 568, 2006-Ohio-5512, ¶ 21. "To prevail on a facial constitutional challenge, the challenger must prove the constitutional defect * * * beyond a reasonable doubt." *Id.* "To prevail on a constitutional challenge to the statute as applied, the challenger must present clear and convincing evidence of the statute's constitutional defect." *Id.*

{¶ 19} Appellant argues that R.C. 959.13(A)(3) is void for vagueness as applied to him because the statute "fails to give reasonable notice that keeping a dog in a warming car for a short period constitutes criminal behavior, especially when the dog suffers no harm."

{¶ 20} A vague statute is one "which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *State v. Phipps*, 58 Ohio St.2d 271, 273 (1979). In order to survive a void-for-vagueness challenge, the statute at issue must be written so that a person of common intelligence is able to determine what conduct is prohibited, and the statute must provide sufficient standards to prevent arbitrary and discriminatory enforcement. *State v. Williams*, 88 Ohio St.3d 513, 532 (2000). A statute will not be declared void, however, merely because it could have been worded more precisely. *Id.*

{¶ 21} "In an as-applied challenge, the challenger contends that application of the statute in the particular context in which he has acted, or in which he proposes to act, [is] unconstitutional." *State v. Carrick*, 131 Ohio St.3d 340, 2012-Ohio-608, ¶ 16. An as-applied challenge contends that the statute is unconstitutional as applied to the challenger's activity, even though the statute may be capable of valid application to others. *Worst*, 2005-Ohio-

6550 at ¶ 42. Thus, an as-applied challenge focuses on the particular application of the statute. *Carrick* at ¶ 16.

{¶ 22} The Fifth Appellate District recently addressed whether R.C. 959.13(A)(3) was void for vagueness. *State v. Johnson*, 5th Dist. Licking No. 14-CA-54, 2015-Ohio-1110. In *Johnson*, the defendants were convicted of violating R.C. 959.13(A)(3) for transporting 62 dogs in several stacked cages in a minivan. Authorities became involved after the minivan broke down and was towed to a motel. The appellate court found that R.C. 959.13(A)(3) was not unconstitutionally vague, stating

> Appellants argue they were without notice that transporting several dogs together in one cage would be in violation of the statute. Appellants were transporting sixty-two dogs in several cages in a Dodge Caravan minivan. The call to authorities regarding the transport issue was made by a lay person, a clerk at the Red Roof Inn, who recognized the inhumaneness of the situation.
>
> We find the definition of "cruelty" not to be overbroad such that a reasonably situated person would not know transporting sixty-two dogs in several cages in a small confined area of a minivan would be cruel.

*Id.* at ¶ 18-19. *See also State v. Hafle*, 52 Ohio App.2d 9 (1st Dist.1977), paragraph one of the syllabus (R.C. 959.13, prohibiting cruelty to animals, gives fair notice that the conduct described is forbidden and such statute is not unconstitutional for vagueness).

{¶ 23} As stated above, when a party challenges a statute as unconstitutional as applied to a particular set of facts, "the party making the challenge bears the burden of presenting clear and convincing evidence of a presently existing set of facts that makes the statute unconstitutional and void when applied to those facts." *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, ¶ 38. Appellant has failed to meet his burden. Given the weather conditions on June 26, 2016, and the fact the van was parked in an unshaded black-top parking lot, a person of ordinary intelligence would understand that leaving a dog locked in a

- 7 -

sealed vehicle for over 40 minutes was cruel and inhumane. Animal cruelty does not consist solely of active cruelty. Passive cruelty and neglect are also punishable under the statute. *State v. Myers*, 87 Ohio App.3d 92, 96 (9th Dist.1993).

{¶ 24} Appellant nonetheless asserts that R.C. 959.13(A)(3) is unclear and vague because it provides absolutely no "guidance" to citizens as "exposed by a few hypothetical – but very relevant questions," such as at what temperature and for how long can one leave a dog in a sealed vehicle, whether humidity is a variable one should consider, whether the size of the dog matters, and whether windows cracked open would make a difference. However, we are concerned not with the various hypotheses appellant advances but with an actual situation. In addition, as the Ohio Supreme Court stated, "most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions." *Collier*, 62 Ohio St.3d at 270. "[T]o be enforceable, legislation need not be drafted with scientific precision." *Id.*

{¶ 25} The danger of leaving an animal locked in a sealed vehicle in hot and humid conditions is well-known. It is significant that upon observing the dog's behavior in the van, the Saxtons were immediately concerned and brought these concerns directly to the attention of appellant who ignored them. Further, the statute provides sufficient guidance to the authorities so that enforcement is not subject to their unfettered discretion. Clearly, the authorities did not charge appellant on a whim. Rather, upon arrival at the scene, they spoke with the Saxtons as to their observations, observed the behavior of the dog locked in the van, noted the weather conditions, waited a short period for appellant to exit Kroger before removing the dog from the van, and noted that the interior temperature of the van was hotter than the outside temperature.

{¶ 26} We therefore find that R.C. 959.13(A)(3) and the definition of "cruelty" are not

so unclear that appellant could not reasonably understand that it prohibited the acts in which he engaged, nor is the statute unconstitutional as applied to his conduct.

{¶ 27} Appellant next argues that R.C. 959.13(A)(3) is unconstitutionally overbroad because it creates criminal liability for leaving a family pet in a warming vehicle.

{¶ 28} In considering an overbreadth challenge, a court must decide "whether the [statute] sweeps within its prohibitions what may not be punished under the First and Fourteenth Amendments." *Akron v. Rowland*, 67 Ohio St.3d 374, 387 (1993). In order to demonstrate facial overbreadth, the party challenging the statute must show that its potential application reaches a significant amount of protected activity. *Id.* A statute is substantially overbroad if it is "susceptible of regular application to protected expression." *Id.* A statute will be invalidated as overbroad only when its overbreadth has been shown by the defendant to be substantial. *State v. Romage*, 138 Ohio St.3d 390, 2014-Ohio-783, ¶ 8.

{¶ 29} We first note that in addition to finding that R.C. 959.13(A)(3) was not unconstitutionally vague, the Fifth Appellate District further found the statute was not unconstitutionally overbroad. *Johnson*, 2015-Ohio-1110 at ¶ 19. As *Rowland* indicates above, an overbreadth challenge usually involves an infringement upon First Amendment rights or rights protected by the Fourteenth Amendment. The application of R.C. 959.13(A)(3) does not prevent or inhibit the exercise of a First Amendment right, and appellant does not so argue. Rather, in a footnote in his brief, appellant "relies on his Fourteenth Amendment right to travel as a basis for his overbreadth defense," "having been convicted for how he 'carried' or 'conveyed' an animal."

{¶ 30} Appellant fails, however, to conduct any analysis in support of his argument. *See* App.R. 16(A)(7); *State v. Richardson*, 12th Dist. Clermont Nos. CA2014-03-023, CA2014-06-044, and CA2014-06-045, 2015-Ohio-824. While the right to travel is a liberty interest protected from state interference under the Fourteenth Amendment, R.C.

- 9 -

959.13(A)(3) does not infringe in any respect upon appellant's right to travel or to transport animals as he travels. *See State v. Burnett*, 93 Ohio St.3d 419 (2001) (addressing the right to travel); *Akron v. Tipton*, 53 Ohio Misc.2d 18 (M.C.1989) (dogs do not have a constitutionally protected right to travel under the United States and Ohio Constitutions). Rather, the statute merely regulates the manner in which animals are to be transported. Thus, appellant was not engaged in protected activity under the First or Fourteenth Amendment when on June 26, 2016, on a sunny and very humid day, he left the dog in a sealed van in 92-degree heat for over 40 minutes.

{¶ 31} In light of the foregoing, we find that appellant has failed to establish that R.C. 959.13(A)(3) is unconstitutionally vague as applied to him or overbroad.

{¶ 32} In his second issue, appellant argues his conviction for cruelty to animals is not supported by sufficient evidence and is against the manifest weight of the evidence because the state failed to prove he acted recklessly by leaving the dog in his van or that the dog suffered any harm as a result.

{¶ 33} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Petit*, 12th Dist. Madison No. CA2016-01-005, 2017-Ohio-633, ¶ 13. The "relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 34} A manifest weight of the evidence challenge, on the other hand, examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *Petit* at ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire

record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily against the conviction. *Id.*

{¶ 35} Although the legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Goodwin*, 12th Dist. Butler No. CA2016-05-099, 2017-Ohio-2712, ¶ 25.

{¶ 36} As stated above, the state was required to prove appellant acted recklessly in leaving the dog in the van. R.C. 2901.22(C) provides that

> A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

Thus, the state was required to show appellant acted with "heedless indifference to the consequences" or perversely disregarded a known risk that his conduct was likely to cause a certain result or to be of a certain nature. *State v. Centers*, 12th Dist. Warren No. CA92-12-107, 1993 Ohio App. LEXIS 4076, *5 (Aug. 23, 1993).

{¶ 37} Upon a thorough review of the record, we find that appellant's conviction for cruelty to animals is supported by sufficient evidence and is not against the manifest weight of the evidence. The state presented testimony and evidence from which the trial court could have found all the essential elements of the offense proven beyond a reasonable doubt.

{¶ 38} The state presented evidence that on June 26, 2016, appellant parked his van around noon in an unshaded, black-top parking lot and subsequently left the dog in the van for over 40 minutes while he ran errands in Kroger. It was a hot, humid, clear, and sunny day with temperatures in the low 90s. The humidity was so high that while waiting for the police next to the van, the Saxtons were both sweating and Mr. Saxton's "shirt was completely soaken wet from me standing out there." The van was not running, its windows were completely closed, and there was no water inside the van for the dog. The entire time the dog was in the van, the dog was not active at all, was either just sitting slouched up against the backseat or lying, and was lethargic and panting. Upon removing the dog from the van, Officer Goodpaster noted that the temperature inside the van was "considerably warmer" than the temperature outside the van. "Excessive heat or sunlight is a legitimate factor to consider in determining whether a person was reckless in confining an animal under the circumstances." *Paul*, 2017-Ohio-4054 at ¶ 20. Appellant's testimony that on prior occasions he had successfully left the dog in a vehicle for 15 to 30 minutes while he ran errands further shows that appellant acted recklessly. *See In re L.Z.*, 5th Dist. Licking No. 15-CA-36, 2016-Ohio-1337 (mental state "recklessness" assumes that the actor intends the act, but not the harm). Additionally, during the exchange at the Kroger customer service desk, Mr. Saxton brought directly to appellant's attention the danger of leaving the dog in a sealed vehicle in the existing weather conditions. Given these facts, the trial court was entitled to find appellant acted recklessly by leaving the dog in the van.

{¶ 39} Appellant further asserts the state failed to prove the dog suffered any harm as a result of being left in the van. However, harm is not an element of the offense. Rather, R.C. 1717.01(B) only requires the state to prove that "unnecessary or unjustifiable pain or suffering [was] caused, permitted, or allowed to continue, when there [was] a reasonable remedy or relief." The state presented evidence that while locked in the van for over 40

minutes, the dog was not active at all, was either just sitting slouched up against the backseat or lying, and was lethargic and panting, and that her panting became more strenuous over time. Thus, the evidence supports a finding that the dog suffered unnecessarily and that appellant allowed the suffering to continue when there was a reasonable remedy.

{¶ 40} In finding appellant guilty of cruelty to animals, the trial court was entitled to discredit his testimony and believe the testimony of Officer Goodpaster and the Saxtons. "The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Rhines*, 2d Dist. Montgomery No. 23486, 2010-Ohio-3117, ¶ 39. "[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony." *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17.

{¶ 41} We therefore find that appellant's conviction for cruelty to animals is not against the manifest weight of the evidence and is supported by sufficient evidence. Appellant's assignment of error is overruled.

{¶ 42} Judgment affirmed.

S. POWELL, P.J., and PIPER, J., concur.