[Cite as *State v. Erdmann*, 2019-Ohio-261.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NOS. CA2018-06-043<br>CA2018-06-044 |
| | : | |
| - vs - | : | O P I N I O N<br>1/28/2019 |
| | : | |
| JOSHUA D. ERDMANN, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2017 CR 0806

Vincent D. Faris, Clermont County Prosecuting Attorney, Nicholas A. Horton, 76 South Riverside Drive, 2nd Floor, Batavia, OH 45102, for appellee

W. Stephen Haynes, Clermont County Public Defender, Robert F. Benintendi, 302 East Main Street, Batavia, OH 45103, for appellant

**S. POWELL, J.**

{¶ 1} Appellant, Joshua D. Erdmann, appeals from his conviction in the Clermont County Court of Common Pleas after a jury found him guilty of assault of a peace officer.[1] For the reasons outlined below, we affirm.

---

1. Erdmann was also convicted of harassment with a bodily substance. Erdmann did not appeal from that conviction.

**Facts and Procedural History**

{¶ 2} On December 19, 2017, the Clermont County Grand Jury returned an indictment charging Erdmann with assault of a peace officer in violation of R.C. 2903.13(A), a fourth-degree felony in accordance with R.C. 2903.13(C)(5). Pursuant to that statute, "[n]o person shall knowingly cause or attempt to cause physical harm to another or to another's unborn." According to the bill of particulars, the charge arose after officers with the Union Township Police Department were dispatched to Erdmann's home to check on a report of a suicidal male. The suicidal male was later identified as Erdmann.

{¶ 3} Once at the scene, the officers observed Erdmann with a severe laceration to his left forearm. The officers dispatched to the scene included the victim in this case, Officer Terrence Kresser. Upon seeing Erdmann in need of medical attention, the officers applied pressure to the wound as they waited for an ambulance to arrive. During this time, the bill of particulars alleged Erdmann "kicked Officer Kresser in his face and spat on Officer Kresser while at the scene. Officer Kresser was acting in performance of his official duties when [Erdmann] kicked and spat on him." Erdmann pled not guilty and the matter proceeded to a three-day jury trial.

**The Trial**

{¶ 4} At trial, the jury heard testimony from several witnesses with the Union Township Police Department, including Officer Kresser. Erdmann did not testify in his defense. The following is a summary of the testimony and evidence presented at trial.

**The State's Case**

{¶ 5} At approximately 6:45 p.m. on July 4, 2017, Officer Kresser and Officer Brad Rhodes were dispatched to Erdmann's home on a report of a possible domestic violence incident. Upon their arrival, Officers Rhodes and Kresser contacted Erdmann and an

unknown female, presumably Erdmann's wife. During this time, the record indicates Erdmann exhibited at least two clues indicating he was intoxicated; namely, the odor of an alcoholic beverage on his person and red, glassy eyes. Erdmann was not arrested during this incident and no charges were filed. The record, however, indicates Erdmann and Officer Kresser exchanged heated, aggressive words towards one another. This includes Erdmann referring to Officer Kresser as "ugly," a "bitch," a "dwarf," and that he had "little man syndrome." Erdmann also told both officers to "get the fuck off his property" and directed his wife to "tell these pansy dicks to leave."

{¶ 6} During this exchange, the record indicates Erdmann got into the face of Officer Kresser. As Officer Rhodes testified:

> [OFFICER RHODES]: Mr. Erdmann walked down from the porch while [Officer Kresser] was standing to my right. As he walked down the back porch, down the stairs, he walked directly towards [Officer Kresser] and was a foot or less from [Officer Kresser].
>
> [THE STATE]: Okay, and when he was that close to [Officer Kresser], a foot or less, was he making statements to [Officer Kresser]?
>
> [OFFICER RHODES]: Yes, he was.
>
> [THE STATE]: And what was he saying?
>
> [OFFICER RHODES]: That was when he called him a dwarf and advised he had little man syndrome and called him a bitch.
>
> [THE STATE]: Okay, and did you see [Officer Kresser] respond in any argumentative or threatening manner towards [Erdmann]?
>
> [OFFICER RHODES]: No.

Although acknowledging that he responded to Erdmann with his own heated and aggressive words, Officer Kresser's testimony regarding this incident essentially mirrored that of Officer Rhodes' testimony.

{¶ 7} An hour later, at approximately 7:45 p.m., several officers with the Union Township Police Department were again dispatched to Erdmann's home to check on a report of a suicidal male. These included both Officers Rhodes and Kresser. As noted above, the suicidal male was later identified as Erdmann. Officer Rhodes was the first officer to arrive at the scene. Upon his arrival, Officer Rhodes observed Erdmann in the front yard being held face-down by another man. Officer Rhodes also observed a severe, large, and deep laceration to Erdmann's left forearm. It is undisputed that the other man holding Erdmann down was later identified as Erdmann's father.

{¶ 8} Shortly before Officer Rhodes' arrival, the record indicates paramedics with the Union Township Fire Department arrived at the scene and began treating Erdmann for his injuries. During this time, Officer Rhodes testified Erdmann was "moving around" in the front yard. Because Erdmann would not remain still, Officer Rhodes testified that he attempted to keep Erdmann's legs stationary so paramedics could continue treating Erdmann for his injuries. Officer Rhodes testified that to secure Erdmann's legs he positioned himself "[j]ust on his left side, just below his hip."

{¶ 9} Officer Kresser arrived at the scene near the same time as Officer Rhodes. Upon his arrival, Officer Kresser knelt to the left of Officer Rhodes near Erdmann's feet. Once there, Officer Kresser testified he began helping Officer Rhodes secure Erdmann's legs. Officer Rhodes testified he secured Erdmann's legs by "[a]pplying light pressure to both legs, just above the knee area." Officer Kresser similarly testified that he attempted to secure Erdmann's legs "with both [his] hands trying to keep his legs down."

{¶ 10} While he and Officer Kresser were securing Erdmann's legs, Officer Rhodes testified Erdmann was acting "disorderly" by "moving around," making it hard for the paramedics to provide care for him, and "screaming." Officer Kresser also testified

Erdmann was "thrashing around" by "kicking his legs, rolling to the left and right." The record indicates that while the officers were securing Erdmann's legs that Erdmann stated to Officers Rhodes and Kresser, "no, not you mother fuckers."

{¶ 11} Continuing to assist paramedics by holding down Erdmann's legs, Officer Rhodes testified "Mr. Erdman lifted his right leg up and kicked [Officer Kresser] in the left side of his face." Explaining further, Officer Rhodes testified:

> Mr. Erdman was laying on the ground, had his arms above his head, and was being treated by the fire department. I was in this area here, near his head. [Officer Kresser] was standing over here at [Erdmann's] left ankle. [Erdmann] was lying here. [Erdmann's] right leg went up, struck [Officer Kresser] in the left side of his face.

Officer Rhodes reiterated this same testimony on cross-examination when asked if Erdmann's foot "definitely" contacted the left side of Officer Kresser's face. Officer Rhodes responded that it did.

{¶ 12} When asked what Erdmann was doing immediately prior to kicking Officer Kresser in the face, Officer Rhodes testified "[h]e was moving on the ground. Making it hard for the medics to provide care. Prior to that point, he did not lift his leg up that high." Officer Rhodes then testified:

> [THE STATE]: Okay, so that was the first time you had seen [Erdmann's] leg travel that high?
>
> [OFFICER RHODES]: Correct.
>
> [THE STATE]: Had you seen his leg cross his body in the manner he did prior to that kick?
>
> [OFFICER RHODES]: No.

{¶ 13} Upon being kicked in the left side of his face, Officer Rhodes testified Officer Kresser fell to his right, placed his arm on the ground, steadied himself, and stood upright. Officer Rhodes then testified:

- 5 -

[THE STATE]: Okay, and the way that everyone was positioned, * * * did [Erdmann] have a clear line of sight to where [Officer Kresser] was?

[OFFICER RHODES]: Yes.

{¶ 14} Officer Kresser's testimony regarding the kick Erdmann gave to the left side of his face is identical to that of Officer Rhodes. As Officer Kresser testified:

[THE STATE]: And at some point, did he swing his leg up towards your head?

[OFFICER KRESSER]: Yes, ma'am.

[THE STATE]: And can you describe that, what happened there?

[OFFICER KRESSER]: I can't remember which leg it was. I know I got hit on the left side of my face. It wasn't a hard kick. It did make me lose my balance.

Officer Kresser then reiterated that, "[y]es, I felt the kick." According to Officer Kresser's testimony, the kick caused him to fall to the right and "stagger so to speak." Officer Kresser also testified Erdmann had a direct line of sight from where he was kneeling next to Officer Rhodes at the time Erdmann kicked him in the face.

{¶ 15} After Erdmann kicked Officer Kresser in the face, Officers Rhodes and Kresser went back to securing Erdmann's legs. Due to his continued disorderly behavior, Erdmann was strapped to a cot and moved into an awaiting ambulance. But, even during this time, Officer Rhodes testified "[Erdmann] was preventing us from strapping him to the cot due to him moving around so much." Officer Kresser also testified that Erdmann "was continuing to thrash or kick and squirm." Officer Rhodes further testified that Erdmann "attempted to take off his tourniquet and was yelling, screaming. Did not want myself or [Officer Kresser] to assist the fire department in escorting him to the life squad."

{¶ 16} Once Erdmann was placed into the ambulance, Officer Rhodes testified

Erdmann spat a "loogie" on Officer Kresser. Officer Kresser also testified that Erdmann spat a "loogie" at him that hit him in the chest. This testimony was confirmed by a third officer, Officer Alex Smith, who testified he saw Erdmann turn and look at Officer Kresser "and then spit on him." Two photographs admitted into evidence depict a glob of saliva on the front of Officer Kresser's police uniform where Erdmann's spit ultimately landed. A "spit hood" was then placed on Erdmann to prevent him from spitting or biting any of the officers as he was transported via ambulance to the hospital.

**Erdmann's Defense**

{¶ 17} In his defense, a paramedic with the Union Township Fire Department testified that he did not see Erdmann kick anyone, including Officer Kresser. The paramedic, however, testified that this may have been because he was "obviously really too busy trying to do patient care * * * and get him stabilized, I did not see that." Explaining further, the paramedic testified on cross-examination:

> [THE STATE]: Okay. Is it fair to say that you were distracted by attending to the wound and not paying attention to maybe what was going on with the rest of [Erdmann's] body?
>
> [PARAMEDIC]: Yes, ma'am.
>
> [THE STATE]: Okay. So is it possible that a kick could have happened or an officer could have been kicked and you wouldn't have noticed it?
>
> [PARAMEDIC]: Could have.

The paramedic also testified that he did not personally observe Erdmann spit on Officer Kresser although he admitted that it certainly could have happened.

{¶ 18} Next, Erdmann's father testified that he called 9-1-1 after he witnessed Erdmann come out of his house with a knife and slit his wrist. Once the paramedics arrived, Erdmann's father testified he moved back so paramedics could treat Erdmann's wound.

According to Erdmann's father, several police officers were also at the scene assisting paramedics tend to his son. However, when asked if Erdmann ever kicked Officer Kresser during this time, Erdmann's father testified that he did not. Specifically, Erdmann's father testified:

> [ERDMANN'S TRIAL COUNSEL]: Okay. Did you see your son land a kick to the side of [Officer Kresser's] head?
>
> [ERDMANN'S FATHER]: No, sir.
>
> [ERDMANN'S TRIAL COUNSEL]: So, you, just to be clear, you didn't see your son's foot come into contact with any officer?
>
> [ERDMANN'S FATHER]: No, his foot got about that close. I could see daylight.

Thereafter, on cross-examination, Erdmann's father testified:

> [THE STATE]: Now, is it possible that with everything that was going on, that kick could have made contact and you just didn't see it based on the angle and the chaos?
>
> [ERDMANN'S FATHER]: No, I was – it – face – my eyes, the daylight from between the house and the backyard, I – I'm just – I can only remember kind of in slow motion of just poof. So no, there was no doubt in my mind.

Concluding, Erdmann's father testified that "there is not a shred of doubt that there was no kick landed."

{¶ 19} Erdmann's wife similarly testified that she "never saw [Erdmann's] foot hit a police officer." However, on cross-examination, Erdmann's wife testified:

> [THE STATE]: Okay. And how – your testimony is that that kick did not land on [Officer Kresser]. Is that right?
>
> [ERDMANN'S WIFE]: I never saw it hit the officer.
>
> [THE STATE]: You never saw it hit, or it didn't hit?
>
> * * *
>
> [ERDMANN'S WIFE]: Correct. To me it – from my vantage

- 8 -

point, it didn't look like it did. I saw an officer moving forward
and jump on his legs. I never saw an officer get hit or fall over
or anything.

But, when asked if it was possible that Erdmann did in fact land a kick on Officer Kresser,

Erdmann's wife testified, "I suppose it is."

## Appeal

{¶ 20} Erdmann now appeals his conviction, raising two assignments of error for review. In his two assignments of error, Erdmann argues the trial court erred by denying his Crim.R. 29 motion for acquittal. In support, Erdmann argues the state provided insufficient evidence to support his conviction for assault of a peace officer. Erdmann also argues his conviction was against the manifest weight of the evidence. We find no merit to Erdmann's claims.

## Standard of Review

{¶ 21} "A Crim.R. 29 motion is asserted to test the sufficiency of the evidence." *State v. McMurray*, 12th Dist. Preble No. CA2014-08-008, 2015-Ohio-2827, ¶ 37. Whether the evidence presented is legally sufficient to sustain a verdict is a question of law. *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Intihar*, 12th Dist. Warren CA2015-05-046, 2015-Ohio-5507, ¶ 9. The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. In other words, "the test for sufficiency requires a determination as to whether the state has met its burden of

production at trial." *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 34, citing *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298, ¶ 33. When evaluating the sufficiency of the evidence, this court must view all evidence in the light most favorable to the state and "defer to the trier of fact on questions of credibility and the weight assigned to the evidence." *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, ¶ 132.

{¶ 22} On the other hand, a manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34.

{¶ 23} Questions regarding witness credibility and weight of the evidence "are primarily matters for the trier of fact to decide since the trier of fact is in the best position to judge the credibility of the witnesses and the weight to be given the evidence." *State v. Walker*, 12th Dist. Butler App. No. CA2006-04-085, 2007-Ohio-911, ¶ 26. As a result, "the question upon review is whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." *Grinstead*, 2011-Ohio-3018 at ¶ 11. Therefore, an appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances

when the evidence presented at trial weighs heavily in favor of acquittal. *State v. Blair*, 12th Dist. Butler No. CA2014-01-023, 2015-Ohio-818, ¶ 43.

{¶ 24} "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *State v. Thompkins*, 78 Ohio St.3d 380 (1997), paragraph two of the syllabus. Nevertheless, although the two concepts are different, a finding that a conviction is supported by the manifest weight of the evidence is also dispositive of the issue of sufficiency. *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19. Therefore, "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." *State v. Hart*, 12th Dist. Brown No. CA2011-03-008, 2012-Ohio-1896, ¶ 43.

**Analysis**

{¶ 25} Erdmann was convicted of assault of a peace officer in violation of R.C. 2903.13(A) and (C)(5). Those statutory provisions make it a fourth-degree felony to "knowingly cause or attempt to cause physical harm to" a peace officer while in the performance of their official duties. Erdmann does not dispute that the victim in this case, Officer Kresser, was a peace officer in the performance of his official duties at the time Erdmann is alleged to have kicked Kresser in the face. Erdmann instead argues the state provided insufficient evidence to prove beyond a reasonable doubt that he knowingly kicked Officer Kresser. Erdmann also claims the jury's finding he acted knowingly when kicking Officer Kresser goes against the manifest weight of the evidence. As stated previously, we find no merit to Erdmann's claims.

{¶ 26} Pursuant to R.C. 2901.22(B), "[a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain

result or will probably be of a certain nature."  Explaining further, the statute provides that "[a] person has knowledge of circumstances when the person is aware that such circumstances probably exist."  The statute concludes by stating that "[w]hen knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact."

{¶ 27} Prior to addressing Erdmann's arguments, we note that, at trial, Erdmann's defense strategy was to deny he ever kicked Officer Kresser.  This is vastly different than the defense strategy Erdmann now advances on appeal; namely, that he did not *knowingly* kick Officer Kresser.  "It is well-established that a party cannot raise new issues or legal theories for the first time on appeal."  *State v. Mehta*, 12th Dist. Butler Nos. CA2000-11-232 and CA2000-12-256, 2001 Ohio App. LEXIS 3896, * 8 (Sept. 4, 2001), citing *Stores Realty Co. v. Cleveland*, 41 Ohio St.2d 41, 43; *see also State v. Williams*, 51 Ohio St.2d 112 (1977), paragraph one of the syllabus ("[a]n appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court").  But, when considering the facts of this case, and taking into account the interests of justice and judicial economy, we nevertheless find it appropriate to review Erdmann's claims challenging his conviction raised herein.

{¶ 28} As noted above, Erdmann argues his conviction must be reversed because reasonable minds could not conclude he knowingly kicked Officer Kresser in the face.  In support, Erdmann claims the jury's finding he acted knowingly was improper when considering he had "been kicking, flailing and screaming prior to Officer Kresser crouching down near his feet."  Erdmann also claims the jury's finding that he acted knowingly was

- 12 -

improper since the state provided "no evidence that [he] knew there was a police officer at his feet." Therefore, according to Erdmann, rather than acting knowingly, his act of kicking Officer Kresser in the face was unintended and amounts to nothing more than an accident.

{¶ 29} The record does not support Erdmann's claim. "By definition, the term 'knowingly' means that the defendant's conduct was not an accident." *State v. Chambers*, 4th Dist. Adams No. 10CA902, 2011-Ohio-4352, ¶ 48. However, after a full and thorough review of the record, we find reasonable minds could easily conclude Erdmann acted knowingly when he kicked Officer Kresser in the face. This is confirmed by the testimony of both Officers Rhodes and Kresser.

{¶ 30} As both officers testified, Erdmann, with a clear line of sight between himself and Officer Kresser, kicked Officer Kresser in the left side of the face as Officer Kresser attempted to secure Erdmann's legs so paramedics to could tend to his injuries. Both officers also testified that Erdmann had not made any similar kicking motions prior to kicking Officer Kresser in the face. Albeit circumstantial, this evidence, if believed, indicates Erdmann acted knowingly – not accidentally – when he kicked Officer Kresser in the face. A conviction based on circumstantial evidence is no less sound than one based on direct evidence. *State v. Petit*, 12th Dist. Madison No. CA2016-01-005, 2017-Ohio-633, ¶ 18.

{¶ 31} In so holding, we note that both Erdmann's father and wife testified that they did not see Erdmann kick Officer Kresser. Erdmann's father even went so far as to testify there was "not a shred of doubt that there was no kick landed." However, while both denied ever seeing Erdmann kick Officer Kresser, the jury clearly found this testimony lacked credibility. The same is true regarding Erdmann's claim now on appeal it was "very unlikely" Erdmann had a clear line of sight to Officer Kresser when he kicked Officer Kresser in the face.

**{¶ 32}** Contrary to Erdmann's claim otherwise, it is well-established that a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the testimony of the state's witnesses. *State v. Crossty,* 12th Dist. Clermont Nos. CA2017-01-003 thru CA2017-01-005, 2017-Ohio-8267, ¶ 68. Nothing about Officers Rhodes', or Kresser's testimony was "self-serving drivel" and "simply preposterous" as Erdmann suggests. Therefore, because we find Erdmann's conviction for assault of a peace officer was supported by sufficient evidence and was not against the manifest weight of the evidence, both Erdmann's first and second assignments of error lack merit.

**Conclusion**

**{¶ 33}** Erdmann's conviction for fourth-degree felony assault of a peace officer in violation of R.C. 2903.13(A) and (C)(5) was supported by sufficient evidence and was not against the manifest weight of the evidence. Simply stated, the record in this case proves false Erdmann's claim that he did not act knowingly when he kicked Officer Kresser in the face. Therefore, because the record fully supports Erdmann's conviction for assault of a peace officer, the trial court did not err by denying Erdmann's Crim.R. 29 motion for acquittal. Erdmann's conviction was also not against the manifest weight of the evidence. Accordingly, finding no merit to any of the arguments raised herein, Erdmann's two assignments of error lack merit and are overruled.

**{¶ 34}** Judgment affirmed.

HENDRICKSON, P.J., and RINGLAND, J., concur.

- 14 -