[Cite as *Franklin v. Lykins*, 2019-Ohio-4726.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

CITY OF FRANKLIN, :

    Appellee, : CASE NO. CA2018-12-139

: O P I N I O N
- vs - 11/18/2019

:

DENISE LYKINS, :

    Appellant. :

CRIMINAL APPEAL FROM FRANKLIN MUNICIPAL COURT
Case No. 18CR34308

Steven M. Runge, Franklin Municipal Court Prosecuting Attorney, 1 Benjamin Franklin Way, Franklin, Ohio 45005, for appellee

Ostrowski Law Firm, L.P.A., Andrea G. Ostrowski, 20 South Main Street, Springboro, Ohio 45066, for appellant

**S. POWELL, J.**

{¶ 1} Appellant, Denise Lykins, appeals her conviction in the Franklin Municipal Court for violating the city of Franklin's unified development ordinance. For the reasons outlined below, we affirm.[1]

---

1. The city of Franklin did not file an appellate brief in this matter. Under these circumstances, this court could have accepted Lykins' statement of facts and issues as correct if her brief reasonably appeared to sustain such an action. This case did not warrant that outcome. However, that does not mean that similar cases would have the same result. *See, e.g., State v. Spicer*, 12th Dist. Butler No. CA2009-02-036, 2009-Ohio-6173, ¶ 6.

{¶ 2}    On April 2, 2018, a complaint was filed charging Lykins with two counts of violating Section 1105.12(c)(1) of the city of Franklin's unified development ordinance ("UDO"), both minor misdemeanors.  Pursuant to that ordinance:

> It shall be unlawful to locate, erect, construct, reconstruct, enlarge, change, maintain, or use any building or land in violation of any of the provisions of this UDO, or any amendment or supplement thereto adopted by the Council of the City of Franklin.  Any person, firm, corporation, or other legal entity violating any of the provisions of this UDO, or any amendment or supplement, shall be guilty of a minor misdemeanor.  Upon conviction, the person, firm, corporation, or other legal entity shall be fined not less than seventy-five dollars ($75.00) nor more than one hundred fifty dollars ($150.00).

{¶ 3}    The charges stemmed from Lykins conducting an alleged impermissible "trucking/distribution business" on her two properties located on South Dixie Highway and South Main Street in violation of UDO Sections 1107.02(c) and 1107.03(b).  Pursuant to those sections of the UDO:

UDO Section 1107.02(c)

> R-3: Central Residential District: Council, by establishing the R-3 Central Residential District, recognizes the existence of older residential areas of the City where homes have been built on small lots and where conservation of the existing housing stock should be encouraged.  The R-3 Central Residential District allows for existing moderate-density housing and new single-family development.  It is not the intent of Council, by the establishment of such District, to provide new moderate density developments as major subdivisions, nor to otherwise expand R-3 Districts beyond the central residential areas of the City.

UDO Section 1107.03(b)

> C-2: Community Commercial District: The intent of the C-2 Community Commercial District is to provide for low-intensity retail uses providing primarily convenience goods and personal services for residential areas with good access to primary and secondary arterial streets.

{¶ 4}    There is no dispute that the property located on South Dixie Highway is zoned as a R-3 central residential district under UDO Section 1107.02(c).  There is also no dispute

that the property located on South Main Street is zoned as a C-2 community commercial district under UDO Section 1107.03(b). There is further no dispute that a payroll business where employees drop off their timecards or pick up their paychecks is a permissible use on property zoned a C-2 community commercial district. Property located in a R-3 central residential district, however, cannot be used for any business purposes other than certain conditional uses that are not applicable to this appeal.[2]

{¶ 5} On October 2, 2018, the trial court held a one-day bench trial on the matter. At trial, the trial court heard testimony from two witnesses; Lykins and Barry Conway, an engineer and zoning official employed by the city of Franklin.

{¶ 6} Conway testified that he had started receiving complaints about the South Dixie Highway and South Main Street properties beginning in early 2017. The complaints prompted Conway to begin "looking at" the two properties to determine if the properties were being used by Lykins for purposes other than those permitted by the UDO. This investigation resulted in Conway observing both properties "having trucks in and out of those properties[.]" According to Conway, this constituted an impermissible use in violation of the UDO Section 1105.12(c)(1) since neither property was "permitted under the zoning regulations to have a… in our opinion was a distribution outfit."[3] This is because UDO Section 1107.05(b) permits "distribution" only on property zoned I-2 general industrial district.

{¶ 7} In March 2017, Conway sent a letter to Lykins advising her that she could not "run a distribution business" out of either the South Dixie Highway or South Main Street

---

2. The "conditional uses" permitted in a R-3 central residential district include a bed and breakfast, as well as "elderly housing," churches, day care centers, community centers, and "commercial recreation," among others.

3. We note that Conway also testified that he observed a help-wanted sign on the South Dixie Highway property seeking drivers for a trucking company located on Ethel Road just outside the city of Franklin.

properties since "[d]istribution in the city is only allowed in the I-2 industrial zone." The following month, in April 2017, Conway met with Lykins and her attorney to discuss the city of Franklin's concerns regarding how Lykins was using the two properties. After this meeting, Conway started photographing the two properties "showing the trucks… the different trucks" were still coming onto and out of the two properties. Conway testified that he took a photograph "each day" showing "a different amount of trucks. Sometimes one or two, sometimes more" coming onto the two properties. According to Conway, some of the trucks he photographed stayed on the properties for "over a few days[.]" The photographs indicate the "trucks" that Conway observed on the two properties were mostly semi-trucks with attached tractor trailers.

{¶ 8} Conway testified that he believed the two properties were being used in violation UDO Section 1105.12(c)(1) due to the "trucks coming in and out and being left there" and "parking there" because "if you look at some of the pictures a couple days later the same trucks are there." Conway also testified that he believed the two properties were being used in violation of the UDO because "the trailers are there without trucks so it's not like they went in to get their paycheck and left, there are trailers sitting there * * * for days." Therefore, because property located in an R-3 central residential district cannot be used for any business purposes (except for certain conditional uses not applicable here), and because only certain low impact businesses are permitted in a C-2 community commercial district, Conway testified that Lykins should be found guilty of violating UDO Section 1105.12(c)(1) as it relates to both properties.

{¶ 9} After denying Lykins' Crim.R. 29 motion for acquittal, Lykins took the stand and testified in her defense. To that end, Lykins initially testified that the South Main Street property was being used to run a "payroll" business and other administrative services for various trucking companies as permitted by UDO Section 1107.03(b). This, according to

Lykins, requires semi-truck drivers employed by those various trucking companies to stop and drop off paperwork such as freight bills, fuel receipts, log books, and timecards. Lykins also testified that these semi-truck drivers would also pick up "change equipment leases for the various companies" at the South Main Street property. Because this is merely administrative, Lykins testified that she was not operating an impermissible trucking/distribution business on the South Main Street property in violation of UDO Section 1105.12(c)(1). Lykins supported this assertion by claiming she did not keep any goods or products at the South Main Street property and that there were no goods or products being moved from one semi-truck to another on the South Main Street property.

{¶ 10} Lykins also testified that the semi-trucks photographed on the South Main Street property were "always" empty both coming onto and going out of that property. According to Lykins, this is because the freight that is being hauled on those semi-trucks is heavy steel coils that require "an overhead crane to distribute[.]" This makes it "impossible" for the South Main Street property to be used for an impermissible trucking/distribution business. Lykins instead testified that the South Main Street Property was being used only for administrative purposes to compensate for the growth of her business. Therefore, even though there were semi-trucks and tractor trailers coming onto and going out of that property on a daily, consistent basis, Lykins testified that the South Main Street property was not being used in violation of UDO Section 1105.12(c)(1).

{¶ 11} Turning then to the South Dixie Highway property, Lykins testified that the South Dixie Highway property was also not being used in violation of UDO Section 1105.12(c)(1). Despite having photographs of semi-trucks and trailers parked on that property, and although acknowledging that she had given permission for semi-truck drivers to park their semi-trucks and tractor trailers on that property, Lykins testified that "[n]othing goes on [at the South Dixie Highway property]." Lykins further testified that neither

electricity or water had been turned on at the South Dixie Highway property and that there were not any goods or products being stored on the South Dixie Highway property. Therefore, just like the South Main Street property, Lykins testified that the South Dixie Highway property was also not being used in violation of UDO Section 1105.12(c)(1).

{¶ 12} Upon denying Lykins' renewed Crim.R. 29 motion for acquittal, the trial court took the matter under advisement. Approximately three months later, on December 27, 2018, the trial court held a final hearing to issue its verdict. During this hearing, the trial court pronounced its verdict finding Lykins guilty of 11 violations of UDO Section 1105.12(c)(1) as it relates to the South Main Street property and an additional 12 violations of UDO Section 1105.12(c)(1) as it relates to the South Dixie Highway property. Upon finding Lykins guilty of these 23 violations, the trial court ordered Lykins to pay a fine totaling $2,300 ($100 for each offense) plus court costs. Lykins now appeals her conviction, raising two assignments of error for review.

{¶ 13} Assignment of Error No. 1:

{¶ 14} THE TRIAL COURT'S DENIAL OF THE DEFENDANT'S MOTION TO DISMISS PURSUANT TO CRIMINAL RULE 29 WAS AN ERROR.

{¶ 15} In her first assignment of error, Lykins argues the trial court erred by denying her Crim.R. 29 motion for acquittal because her conviction was not supported by sufficient evidence. We disagree.

{¶ 16} This court reviews the denial of a Crim.R. 29 motion for acquittal under the standard that is used to review a sufficiency-of-the-evidence claim. *State v. Workman*, 12th Dist. Clermont Nos. CA2016-12-082 and CA2016-12-083, 2017-Ohio-8638, ¶ 19. Whether the evidence presented is legally sufficient to sustain a verdict is a question of law. *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines

the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Intihar*, 12th Dist. Warren No. CA2015-05-046, 2015-Ohio-5507, ¶ 9. The relevant inquiry is "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Erdmann*, 12th Dist. Clermont Nos. CA2018-06-043 and CA2018-06-044, 2019-Ohio-261, ¶ 21, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 17} Lykins initially argues that her conviction must be reversed since the UDO does not define what constitutes "distribution" as that term is used in UDO Section 1107.05(b) to describe the permissible uses for property zoned an I-2 general industrial district. This, according to Lykins, renders the UDO unconstitutionally void for vagueness. We find no merit to Lykins' claim.

{¶ 18} "Legislative enactments are afforded a strong presumption of constitutionality." *State v. Graves*, 12th Dist. Warren No. CA2016-11-096, 2017-Ohio-6942, ¶ 17, citing *State v. Collier*, 62 Ohio St.3d 267, 269 (1991). Consequently, "courts must apply all presumptions and pertinent rules of construction so as to uphold, if at all possible, a statute or ordinance assailed as unconstitutional." *State v. Dorso*, 4 Ohio St.3d 60, 61 (1983); *State v. Worst*, 12th Dist. Butler No. CA2004-10-270, 2005-Ohio-6550, ¶ 41. When a statute is challenged on the basis of vagueness, if a general class of offenses "can be made constitutionally definite by a reasonable construction of the statute, this Court is under a duty to give the statute that construction." *State v. Dorso*, 4 Ohio St.3d 60, 61 (1983), quoting *United States v. Harriss*, 347 U.S. 612, 618, 74 S.Ct. 808 (1954). Therefore, "[w]hen a statute is alleged to be void for vagueness, all doubts are to be resolved in favor of the constitutionality of the statute." *State v. Harrington*, 159 Ohio App.3d 451, 2004-Ohio-7140, ¶ 20 (12th Dist.), citing *City of Oregon v. Lemons*, 17 Ohio App.3d 195, 196 (6th

Dist.1984).

{¶ 19} "[A] vague statute is one 'which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.'" *State v. Phipps*, 58 Ohio St.2d 271, 273 (1979), quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126 (1926). "'It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined.'" *State v. Young*, 62 Ohio St.2d 370, 372 (1980), quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294 (1972). This requires the statute or ordinance in dispute to "'provide sufficient standards to prevent arbitrary and discriminatory enforcement.'" *Graves*, 2017-Ohio-6942 at ¶ 20, citing *State v. Williams*, 88 Ohio St.3d 513, 532 (2000). A statute or ordinance will not be declared void, however, "'merely because it could have been worded more precisely.'" *State v. Kaiser*, 12th Dist. Butler No. CA2005-11-475, 2006-Ohio-7027, ¶ 11, quoting *State ex rel. Rear Door Bookstore v. Tenth Dist. Ct. of Appeals*, 63 Ohio St.3d 354, 358 (1992).

{¶ 20} Although the UDO could have been worded more precisely by providing a definition of what constitutes "distribution" as that term is used in UDO Section 1107.05(b), how Lykins was using the South Dixie Highway property was clearly prohibited in a R-3 central residential district under UDO Section 1107.02(c). So, too, was Lykins' use of the South Main Street property located in a C-2 community commercial district under UDO Section 1107.03(b). The UDO plainly provides that property zoned as a R-3 central residential district cannot be used for any business (except for certain conditional uses not applicable here), whereas a C-2 community commercial district can only be used for "low-intensity retail uses providing primarily convenience goods and personal services for residential areas with good access to primary and secondary arterial streets." Men and women of common intelligence would understand that a business where numerous semi-

trucks and large tractor trailers were (1) coming onto and out of the property on a daily, consistent basis and/or (2) coming onto the property where those same semi-trucks and tractor trailers would then sit parked and unmoved for more than a few days was not a permissible use on either property. This holds true regardless of whether Lykins was actually using the two properties for "distribution" under UDO Section 1107.05(b).

{¶ 21} Despite Lykins' claims, the issue at trial was not whether she was using either the South Dixie Highway or the South Main Street properties for "distribution," under UDO Section 1107.05(b). The issue was instead whether Lykins was improperly using those two properties, one zoned as an R-3 central residential district under UDO Section 1107.02(c) and the other zoned as a C-2 community commercial district under UDO Section 1107.03(b), so as to subject her to criminal liability under UDO Section 1105.12(c)(1). Therefore, because there is nothing about this portion of the UDO that invites subjective interpretation as to what is prohibited by UDO Sections 1107.02(c) and 1107.03(b), nor anything about these portions of the UDO that would lead to arbitrary and discriminatory enforcement under UDO Section 1105.12(c)(1), Lykins' claim that the UDO is unconstitutionally void for vagueness lacks merit.

{¶ 22} Lykins also argues that her conviction must be reversed because the state failed to prove she was using either the South Dixie Highway property or the South Main Street property for "distribution." We again find no merit to Lykins' claim.

{¶ 23} As noted above, the issue at trial was not whether Lykins was using either property in a manner that would have been permitted in an I-2 general industrial district under UDO Section 1107.05(b). The issue was instead whether Lykins was using the two properties in violation of UDO Sections 1107.02(c) and 1107.03(b) so as to subject her to criminal liability under UDO Section 1105.12(c)(1). Maintaining a business where numerous semi-trucks and large tractor trailers were (1) coming onto and out of the property

on a daily, consistent basis and/or (2) coming onto the property where those semi-trucks and tractor trailers would then sit parked and unmoved for more than a few days is not permissible on property located in either a R-3 central residential district under UDO Section 1107.02(c) or a C-2 community commercial district under UDO Section 1107.03(b). This, as stated previously, holds true regardless of whether Lykins was actually using the two properties for "distribution" under UDO Section 1107.05(b). Therefore, because Lykins' conviction was supported by sufficient evidence, Lykins' first assignment of error lacks merit and is overruled.

{¶ 24} Assignment of Error No. 2:

{¶ 25} THE TRIAL COURT'S FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 26} In her second assignment of error, Lykins argues that her conviction was against the manifest weight of the evidence since she was the only witness who testified how the two properties were being used; a payroll business on the South Main Street property with "nothing" on the South Dixie Highway property. The trial court, however, clearly found Lykins' testimony lacked credibility. It is well established that it is the trier of fact and not this court on appeal that makes determinations of credibility and the weight to be given to the evidence presented at trial. *State v. Erickson*, 12th Dist. Warren No. CA2014-10-131, 2015-Ohio-2086, ¶ 42, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. It is equally well established that a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the testimony offered by the prosecution. *State v. Crossty*, 12th Dist. Clermont Nos. CA2017-01-003 thru CA2017-01-005, 2017-Ohio-8267, ¶ 68. Such is the case here. Therefore, because Lykins' conviction was not against the manifest weight of the evidence, Lykins' second assignment of error also lacks merit and is overruled.

{¶ 27} Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.